## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 18-CR-350 (TSC) |
| | ) | |
| v. | ) | **UNDER SEAL** |
| | ) | |
| FANOR HERNAN BARONA RAMIREZ, | ) | |
| Defendant. | ) | |

### STATEMENT OF FACTS

Were this case to proceed to trial, the United States of America would prove the following facts at trial beyond a reasonable doubt:

1.     This proffer of evidence is not intended to constitute a complete statement of all facts known by Fanor Hernan Barona Ramirez (hereinafter, "Defendant"), but is a minimum statement of facts intended to provide the necessary factual predicate for the Defendant's guilty plea and his sentencing.   The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for Defendant's plea of guilty to the charged offense, which carries with it a mandatory statutory minimum sentence.  The Government submits that had there been a trial in this matter, the Government would have proven each of the facts as outlined beyond a reasonable doubt, and further that the facts satisfy each of the essential elements of the charge, as well as the amount and type of drug involved, to which the Defendant is entering his plea.

2.     From in or around February 2018 and continuing thereafter up to and including November 2018, in the countries of Colombia, Costa Rica, Mexico, and the United States, the Defendant was part of a conspiracy, the object of which was to distribute five (5) kilograms or more of a substance containing a detectable amount of cocaine, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United

States, in violation of Title 21, United States Code, Sections 959(a), 960, and 963 and Title 18, United States Code, Section 2.

3. During the course and in furtherance of the conspiracy, from in or about February 2018 through November 2018, the Defendant operated in Colombia as coordinator and financial conduit for a Drug Trafficking Organization ("DTO"), whose purpose was to purchase and transport wholesale quantities of cocaine from Colombian sources of supply to Central America and Mexico, before its subsequent importation into the United States. The Defendant worked with co-conspirators, including Colombian investors and drug trafficking organizations in Mexico, to broker and coordinate cocaine shipments originating in Colombia and arriving in Central America and Mexico. The DTO used a variety of transportation means to transport its cocaine, including small aircraft and go-fast boats.

4. In and around February 2018, the Defendant along with his co-conspirators attended a meeting with a cocaine supplier in Medellin, Colombia. During this meeting, a co-conspirator stated that he had a contact based in Guadalajara, Mexico, who went by the alias "El Tio," that led a Mexican based DTO. The co-conspirators stated that El Tio and El Tio's nephew were looking to purchase at least 200 kilograms of cocaine and have it transported to a private airstrip in Honduras, Guatemala, or Costa Rica. The co-conspirators agreed to invest in half of a 400-kilogram shipment of cocaine.

5. The Defendant and his co-conspirators further agreed to pay $4.5 million Colombian pesos per kilogram of cocaine plus an additional 1 million Colombian pesos per kilogram of cocaine to cover the cost and transportation services for the cocaine. The Defendant and his co-conspirators agreed to pay for the cocaine in full and pay half the transportation fees before the cocaine shipment took off from Colombia to Honduras or Costa

Rica. The Defendant and his co-conspirators would pay in a series of installments over time at various locations in and around Medellin, Colombia.

6.    The Defendant and his co-conspirators discussed with the cocaine supplier potential sites to deliver the cocaine via aircraft and stated they would pick up the cocaine in Choco, Colombia, and then watch it be loaded into an airplane. A co-conspirator further stated that the Mexican DTO transports the cocaine received in Mexico to the Los Angeles area.

7.    In and around February 2018, the Defendant along with his co-conspirators attended a meeting with a cocaine supplier in Cali, Colombia. During this meeting, they discussed the potential for future cocaine shipments and transports from Colombia, Venezuela, Mexico, and Costa Rica.

8.    The Defendant and his co-conspirators discussed customers in Costa Rica who were seeking cocaine shipments and transportation to Costa Rica. The Defendant and his co-conspirators agreed to use a Cessna 3100 for the transport, and the co-conspirators wanted to use their private airstrip in Costa Rica for receipt of the shipment.

9.    The Defendant and his co-conspirators initially discussed a price of $3,100 USD per kilogram plus "taxes" paid to the owners of the product, and transportation fees, but ultimately decided that this price was too high, and they would need to negotiate further. Additionally, the Defendant and his co-conspirators discussed a fishing company they would use to transport shipments of cocaine to Mexico. The co-conspirators detailed how they usually transport cocaine from Costa Rica to Mexico. First, the cocaine is loaded onto the fishing boats in open waters. From Costa Rica, the cocaine is loaded on boats and taken to Mexico, with the delivery of the cocaine also occurring on open waters. Each shipment is equipped with GPS tracking devices. If the operators of the boats see law enforcement

approaching, they drop the cocaine into the water and are able to locate it later using the GPS tracking devices.

10.    In and around April 2018, a co-conspirator went to San Jose, Costa Rica, to prepare the shipment of cocaine for transport from Colombia to Costa Rica. The co-conspirator traveled from San Jose to the province of Punta Arenas, Costa Rica. From there the co-conspirators went to a remote mountainous area of Punta Arenas to observe a clandestine airstrip to determine its suitability for landing the airplane of cocaine.

11.    In and around early May 2018, during a meeting in Pereira, Colombia, the Defendant and his co-conspirators completed their negotiations and agreed to a final price of approximately $1200 USD per kilogram of cocaine plus 3.5 million pesos for transportation costs.

12.    Approximately two weeks later, the Defendant, on behalf of his co-conspirators, made an initial partial payment of 1 billion Colombian pesos for purposes of purchasing at least 200 kilograms of cocaine. The Defendant understood that his and his co-conspirators' 200-kilogram purchase was part of a larger shipment of at least 400 kilograms of cocaine. The Colombian National Police ("CNP") used an undercover officer ("UC") for the transaction. The Defendant delivered the money to the UC's room at Hotel Capri in Cali, Colombia.

13.    On or about July 7, 2018, the Defendant and his co-conspirators made their second payment of 1 billion Colombian pesos for purposes of purchasing the initial 200 kilograms of cocaine. The Defendant, on behalf of his co-conspirators, made the second payment of 1 billion Colombian pesos to a CNP UC at Hotel Pasoancho in Cali, Colombia.

14.     On or about July 8, 2018, the Defendant and his co-conspirators met with the cocaine supplier in Armenia, Colombia. The Defendant and his co-conspirators explained the reason for the delay in making the final payment for the cocaine delivery, as they had only paid 2 billion Colombian pesos at this time. Specifically, they explained that they had difficulty moving the money from Mexico to Colombia and confirmed that they now had all the money ready for payment.

15.     At this meeting, the Defendant and his co-conspirators were shown a photograph of a potential airstrip for the cocaine delivery and agreed that the airstrip was perfect for the operation. A co-conspirator stated he would be present personally to receive the cocaine in Costa Rica. After the cocaine arrived in Costa Rica, the co-conspirator stated that it would be loaded into a vehicle and taken to a boat. After the cocaine was on the boat, the cocaine would procced to Mexico and then Los Angeles, California.

16.     One of the Defendant's co-conspirators stated that they expected to receive the cocaine 15 days after the final payment. The Defendant and his co-conspirators advised that they wished to visually inspect the cocaine before it is loaded onto the plane. To ensure that the same kilograms arrived in Costa Rica and were not swapped out for a different product, the Defendant and his co-conspirators wanted their own "brand" placed on each kilogram. At the request of a co-conspirator, each kilogram would bear a "Bugs Bunny" stamp and sticker which they would provide. The Defendant and his co-conspirators indicated that if the initial delivery was successful, they would immediately be looking to transport an additional 1,500 kilograms using the same methods.

17.    Also, on or about July 23, 2018, the Defendant and his co-conspirators made their third and final payment of 600 million Colombian pesos for purposes of purchasing the initial 200 kilograms of cocaine. The Defendant delivered the money to the CNP UC's room at Hotel Capri in Cali, Colombia.

18.    From August 2018 until September 2018, the Defendant had multiple meetings with the cocaine supplier in Monteria, Colombia. The purpose of these meetings was to discuss the logistics of the cocaine transport from Monteria, Colombia to Costa Rica. After the meetings it was determined that the cocaine shipment would not be delivered for 7-10 days. The Defendant stated that he would report the delay to his co-conspirators.

19.    In September 2018, the Defendant was informed that the cocaine shipment was ready. The Defendant stated that he was with his boss who stated that the airplane could leave without their inspection. Later that day, the Defendant was informed that the shipment had taken off. The Defendant requested continuing updates on the status of the plane.

20.    On September 14, 2018, a plane departed from Los Garzones International Airport in Monteria, Colombia transporting the cocaine the DTO had purchased. This aircraft was subsequently seized and approximately 191 kilograms of cocaine were recovered from the aircraft. The seized cocaine contained the "Bugs Bunny," stamp and sticker the Defendant and other co-conspirators requested.

21.    The Defendant was sent screenshots of an alleged law enforcement report that CNP seized the drugs, as they bore the "Bugs Bunny" sticker the Defendant's co-conspirators had requested. Subsequently, a news outlet then released a press release stating that the CNP seized 191 kilograms of cocaine with "Bugs Bunny" stickers attached to the kilograms from an airplane that is capable of holding 500-700 kilograms of cocaine. The Defendant was also

provided a link to this press release.

22.    The Defendant admits that the total amount of cocaine involved in this conspiracy that is directly accountable to him because of his own conduct and because of the conduct of other conspirators reasonably foreseeable to him is more than 150 kilograms but less than 450 kilograms.

23.    The Defendant admits that he knew the cocaine would be illegally imported into the United States.

24.    The parties agree that the above-outlined facts satisfy each of the essential elements of the charge to which the Defendant is entering his plea. The Defendant acknowledges that there are additional details about his involvement in the drug trafficking conspiracy that are not included in this statement.

25.    The Defendant agrees venue pursuant to 18 U.S.C. § 3238 is proper with this Court.

26.    The Defendant also agrees that his participation as a conspirator in the above-described acts was in all respects knowing, intentional, and willful, reflecting an intention and deliberation to do something the law forbids, and were not in any way the product of any accident, mistake of law or fact, duress, entrapment, or public authority.

27.    With his signature below and that of his counsel, the Defendant agrees that he has fully adopted this statement of facts as his own statement. The Defendant is adopting this statement of facts because it is a true and correct summary of the Defendant's own conduct.

///

///

///

7

28.     The Defendant is pleading guilty because the Defendant is in fact guilty.

MARLON COBAR
CHIEF
NARCOTIC & DANGEROUS DRUG SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

Date: 1/17/2024                    By:

Imani D. Hutty
Douglas Meisel
Trial Attorneys
Ernest Gonzalez
Senior Trial Advisor

Date: 1/17/2024          Approved By:

Kaitlin J. Sahni
Acting Deputy Chief of Litigation

8

## DEFENDANT'S ACCEPTANCE

I have read this Statement of Facts with the assistance of my attorney, Alfred Guillaume III, Esq., who is fluent in Spanish and English. Further, I have discussed this Statement of Facts at length with my attorney. I fully understand this Statement of Facts and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of Facts fully. I am pleading guilty because I am in fact guilty of the offense.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in the Plea Agreement. I am satisfied with the legal services provided by my attorney in connection with the Plea Agreement, Statement of Facts and matters related to it.

_____          1-15-24
Fanor Hernan Barona Ramirez                Date
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I am the Defendant's attorney. I am fluent in Spanish and English. I have fully explained to the Defendant his rights and the applicable provisions of the Sentencing Guidelines. I have carefully reviewed every part of this Statement of Facts with the Defendant. The Defendant is entering into this Statement of Facts voluntarily, intelligently, and with full knowledge of all consequences of the Defendant's plea of guilty.

_____          1-15-24
Alfred Guillaume III, Esq.                  Date
Attorney for Defendant

9